**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHFIELD LABORATORIES INC., | ) | Case No. 09-11924 (BLS) |
| | ) | |
| Debtor. | ) | |
| ———————————————————— | ) | |
| | ) | |
| THE PAUL H. SHIELD, MD, INC. | ) | |
| PROFIT SHARING PLAN and THE | ) | |
| PAUL H. SHIELD, MD, INC. | ) | |
| MONEY PURCHASE PLAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adv. Pro. No. 09-53274 (BLS) |
| v. | ) | |
| | ) | |
| NORTHFIELD LABORATORIES INC.; | ) | |
| STEVEN GOULD; MARC DOUBLEDAY; | ) | |
| GEORGE HIDES; JACK KOGUT; | ) | |
| ROBERT MCGINNIS; LAUREL OMERT | ) | |
| and SOPHIA TWADDELL, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | Re: Adv. Docket Nos. 4 and 7 |

Seth D. Rigrodsky
Brian D. Long
RIGRODSKY & LONG, P.A.
919 N. Market Street, Suite 980
Wilmington, DE 19801

Laurence Rosen
Phillip Kim
The Rosen Law Firm, PA
350 5th Avenue, Suite 5508
New York, NY  10118

*Counsel to Plaintiffs Paul H.*
*Shield, MD, Inc. Profit Sharing*
*Plan and the Paul H. Shield,*
*MD, Inc. Money Purchase Plan*

Mark Minuti
SAUL EWING LLP
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE 19899

Robyn Forman Pollack
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

*Counsel to the Liquidation*
*Trustee*

Ronald L. Marmer
J. Kevin McCall
JENNER & Block LLP
353 N. Clark Street
Chicago, IL  60654

*Counsel to the Liquidation
Trustee and Steven A. Gould, MD*

William A. Hazeltine
SULLIVAN HAZELTINE ALLISON LLC
4 East 8th Street, Suite 400
Wilmington, DE  19801

Steven B. Towbin
Terence G. Banich
SHAW GUSSIS FISHMAN GLANTZ
WOLFSON & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, IL  60654

*Counsel to Marc Doubleday,
George Hides, Jack Kogut,
Robert McGinnis, Laurel Omert,
and Sophia Twaddell*

## MEMORANDUM OPINION[1]

Before the Court is (i) the Motion to Dismiss Adversary Proceeding Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5) and 12(b)(6)[Adv. Docket No. 4] (the "Officer Motion") filed by defendants Marc Doubleday, George Hides, Jack Kogut, Robert McGinnis, Laurel Omert, and Sophia Twaddell (collectively, the "Officer Defendants" and together with Steven Gould and Northfield Laboratories, Inc., the "Defendants"); and

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

(ii) the Motion of Liquidation Trustee and Steven A. Gould, M.D. to Dismiss Adversary Complaint or in the Alternative for Transfer [Adv. Docket No. 7](the "Trustee/Gould Motion," together with the Officer Motion, the "Motions"), seeking dismissal of the complaint (the "Complaint") filed by the Paul H. Shield, MD, Inc. Money Purchase Plan and the Paul H. Shield, MD, Inc. Profit Sharing Plan (together "Plaintiffs"). The Complaint alleges three claims. The first claim seeks equitable subordination of Defendants' Former Officer Claims (as defined below). The second and third claims allege that Defendants violated the Securities Exchange Act of 1934.

By the Motions, Defendants request that the Court dismiss the Complaint for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1), (5), and (6), made applicable here by Federal Rule of Bankruptcy Procedure 7012. In the alternative, to the extent that the securities claims are not dismissed, Defendants request that the Court transfer these claims to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1412. For the following reasons, the Court will grant the Motions in part.

## I.    __BACKGROUND__

On March 17, 2006, Plaintiffs commenced several putative class action lawsuits against Northfield, Dr. Gould, and another former officer in the United States District Court for the Northern District of Illinois (the "Illinois District Court"). The suits were consolidated under the case styled In re Northfield Lab., Inc. Sec. Litig., Case No. 06-C-1493 (the "Securities Litigation").  By the Securities Litigation, Plaintiffs asserted that the defendants therein knowingly issued false and misleading statements and concealed adverse safety and effectiveness information related to Northfield's sole product, PolyHeme.

More than three years later, on June 1, 2009 (the "Petition Date") Northfield Laboratories, Inc. ("Northfield" or "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  On June 24, 2009, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Committee") in the Debtor's case [Docket No. 38].  Plaintiffs' owner, Paul H. Shield, was appointed as a member of the Committee.

Two days after the Petition Date, on June 3, 2009, the Debtor filed a disclosure statement [Docket No. 19] (the "Original Disclosure Statement") and a proposed plan of reorganization (as amended, the "Plan").  The Original

4

Disclosure Statement stated that "[t]he principal indebtedness of the Debtor consists of severance obligations under employment contracts with its current and former officers." (Original Disclosure Statement at 4). The Original Disclosure Statement indicated that the severance obligations (defined in the Plan as the "Former Officer Claims") would be classified as priority claims or general unsecured claims, entitled to Class 1 or Class 2 status, respectively. (Id. at 4). Class 1 claims were to be paid in full and Class 2 claims were to be paid pro rata from any liquidation proceeds. (Id. at 7).

The Plan defined "Securities Claims" to include, inter alia, "any claim for damages or any other relief arising from any . . . purchase, sale or other acquisition of . . . common stock or other equity security . . . including the claims of the plaintiffs in the case styled In re Northfield Laboratories, Inc. Securities Litigation, consolidated under Case Number 06 CV 1493 . . . ." Plan, App. A, at iv. The Original Disclosure Statement and Plan indicated that Class 3 Securities Claims would receive a distribution "of any available Liquidation Proceeds after the payment and satisfaction of all Class 2 General Unsecured Claims." (Id.).

Plaintiffs objected [Docket No. 45] to the Original Disclosure Statement arguing that, inter alia, it failed to provide adequate information regarding: (i) the Debtor's assets

5

and disposition thereof; (ii) the claims against the Debtor, particularly the Former Officer Claims and the Securities Claims; and (iii) the releases to be granted in the Plan. Plaintiffs also filed a motion to convert the Debtor's bankruptcy case to one under chapter 7 of the Bankruptcy Code [Docket No. 88], but later withdrew that motion [Docket No. 117].

On August 7, 2009, the Debtor filed an amended disclosure statement (the "Disclosure Statement") and an amended version of the Plan [Docket Nos. 90 and 91].  The amendments did not alter the distribution scheme whereby Plaintiffs' Securities Claims were classified below and paid after the Former Officer Claims. Plaintiffs did not object to the amended Plan or the Disclosure Statement.

On August 11, 2009, the Court entered an Order [Docket No. 98] approving the Disclosure Statement over all objections. On September 11, 2009, the Court entered an Order [Docket No. 129] (the "Confirmation Order") approving the Plan, and on September 25, 2009 (the "Effective Date"), the Plan became effective [See Docket No. 137]. Plaintiffs did not appeal the Order approving the Disclosure Statement or the Confirmation Order.

On the Effective Date, Plaintiffs requested that the Illinois District Court transfer the Securities Litigation to

6

this Court.  On November 10, 2009, the Illinois District Court denied Plaintiffs' request.  See In re Northfield Lab., Inc. Sec. Litig., No. 06-cv-01493 (N.D. Ill. Nov. 10, 2009) (order denying transfer motion).  In so ruling, the Illinois District Court admonished Plaintiffs against "judge-shopping." (Id.).

Thereafter, on December 23, 2009, Plaintiffs filed the Complaint commencing this adversary proceeding.  Defendants then filed the Motions, Plaintiffs filed a brief in opposition to the Motions [Adv. Docket No. 24], and Defendants filed a joint reply [Adv. Docket No. 25].  The Court heard oral argument on the Motions on July 12, 2010.[2]  This matter has been fully briefed and is ripe for decision.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motions constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## III. STANDARD OF REVIEW

Defendants seek dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by

---

[2]    Following oral argument on the Motions, the Court received and reviewed Defendants' Citation of Subsequent Authority in Support of Their Motions to Dismiss Adversary Complaint or in the Alternative For Transfer.  [See Adv. Docket No. 33].

Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To decide a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "Stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotations omitted) (citations omitted).

## IV. DISCUSSION

### A.  The Equitable Subordination Claim

Bankruptcy Code section 510(c)(1) provides that "the court may - under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1). By their equitable subordination claim,

8

Plaintiffs seek to move their Securities Claims ahead of the Former Officer Claims in priority.  (Compl. 3).

The plain language of section 510, however, prohibits the relief Plaintiffs request and provides that claims can only be subordinated to other claims, not interests.  <u>See</u> 11 U.S.C. § 510(c); <u>Schubert v. Lucent Techs. Inc. (In re Winstar Commc'ns, Inc.)</u>, 55 F.3d 382, 414 (3d Cir. 2009).  The distinction between "claim" and "interest" corresponds to the distinction between creditors and equity holders. <u>Id.</u>; <u>See also, Adelphia Recovery Trust v. Bank of America, N.A.</u>, 390 B.R. 80, 99 (S.D.N.Y. 2008). Plaintiffs' claims arise out of the purchase of the Debtor's common stock. Pursuant to section 510(b), such claims are assigned the same priority as the stock.[3]  <u>See</u> 11 U.S.C. § 510(b). Accordingly, Plaintiffs' Securities Claims must be classified at the same priority as their "interests" as common equity holders.  Section 510 does not allow the Former Officer Claims, held by Defendants who are "creditors," to be subordinated to Plaintiffs' "interests."  <u>See In re Kaiser</u>

---

[3]     Section 510(b) provides that "[f]or the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."  11 U.S.C. § 510(b).

Group, Int'l, Inc., 260 B.R. 684, 687 (Bankr. D. Del. 2001),
aff'd, 2001 WL 34368405 (D. Del.).

Plaintiffs' attempts to use alternative provisions of the
Bankruptcy Code to elevate their Securities Claims are equally
unavailing. In their prayer for relief, Plaintiffs request that
the Court "revok[e] such portion of the Plan and modify[] such
portion of the Plan to reflect such subordination." (Compl. 65)
(emphasis added).  The parameters of revocation and modification
of a chapter 11 plan are specifically circumscribed by
Bankruptcy Code sections 1144 and 1127, respectively.

Bankruptcy Code section 1127 governs post-confirmation
modification of a chapter 11 plan.  Section 1127(b) provides
that "the proponent of a plan or a reorganized debtor may modify
such plan at any time after confirmation of such plan and before
substantial consummation of such plan . . . ." 11 U.S.C. §
1127(b) (emphasis added). There is no dispute that Plaintiffs
are not plan proponents or the reorganized debtor, and only plan
proponents or the reorganized debtor may seek to modify a plan
post-confirmation.  In re Innovative Clinical Solutions, Ltd.,
302 B.R. 136, 144 (Bankr. D. Del. 2003).  Section 1127,
therefore, provides no basis for the Court to modify the Plan as
Plaintiffs request.

Bankruptcy Code section 1144 governs revocation of a plan
of reorganization and is similarly unhelpful to Plaintiffs.

Section 1144 provides, in relevant part, that "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."  11 U.S.C. § 1144.  To prevail under section 1144, a plaintiff must specifically allege facts showing fraud in the procurement of the confirmation order.  <u>See In re Longardner & Associates, Inc.</u>, 855 F.2d 455, 461-62 (7th Cir. 1988) ("Without a specific showing of the requisite fraudulent intent, the bankruptcy court had no authority under section 1144 to revoke its confirmation order.").  Courts have also applied section 1144 to situations where the movant is attempting "'to do indirectly what [it] no longer may do directly' because of the statutory bar."  <u>In re Genesis Health Ventures, Inc.</u>, 340 B.R. 729, 733 (D. Del. 2006) (quoting <u>Hotel Corp. of the South v. Rampart 920, Inc.</u>, 46 B.R. 758, 770-71 (E.D. La. 1985), <u>aff'd</u>, 781 F.2d 901 (5th Cir. 1986)).

Plaintiffs appear to request partial revocation of the Plan limited to "such portion of the Plan to reflect such subordination." (Compl. 65).  The plain language of section 1144, however, only provides for revocation of an entire confirmation order.  It is unclear whether partial revocation is permissible pursuant to section 1144 and Plaintiffs have cited no case law in this regard.  Most importantly, however,

11

Plaintiffs have failed to allege any facts showing that the Confirmation Order was procured by fraud.  Accordingly, Plaintiffs have failed to properly plead facts from which the Court could conclude that revocation is appropriate here. As indicated above, a confirmed chapter plan is binding unless it may be revoked through section 1144 or modified by section 1127. Plaintiffs have failed to allege sufficient facts from which the Court could infer that either revocation or modification is appropriate.  Even if Plaintiffs had sufficiently alleged a viable section 510 claim, Plaintiffs could not use section 510 equitable subordination to circumvent the requirements of sections 1144 and 1127.

In addition, the provisions of the confirmed Plan are binding on Plaintiffs pursuant to Bankruptcy Code section 1141(a) and basic principles of claim preclusion.  Section 1141(a) provides that, with limited exceptions inapplicable here, "the provisions of a confirmed plan bind . . . any creditor, [or] equity security holder . . . whether or not the claim or interest of such creditor, [or] equity security holder . . . is impaired under the plan and whether or not such creditor, [or] equity security holder . . . has accepted the plan."  11 U.S.C. § 1141(a).

The principle of claim preclusion likewise provides finality and bars re-litigation of claims that were or could

12

have been litigated in a prior action between the same parties,
if a final judgment on the merits was issued in the prior
action.  CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d
187, 194-95 (3d Cir. 1999).  Claim preclusion applies to
confirmed plans of reorganization, just as it does to any final
judgment on the merits.  Id.

By their equitable subordination claim, Plaintiffs contend
that the Former Officer Claims should be paid only after the
Securities Claims; despite the fact that the Plan clearly
provides that the Former Officer Claims have priority over the
Securities Claims.  Plaintiffs' equitable subordination request
essentially constitutes a Plan objection.  As described above,
Plaintiffs participated in the Debtor's bankruptcy case through
counsel and Plaintiffs' owner participated as a member of the
Committee.  The equitable subordination claim could have been
raised as a Plan objection.  The Confirmation Order is a final
judgment on the merits and was entered without objection from
Plaintiffs.  Accordingly, claim preclusion bars Plaintiffs from
litigating their equitable subordination claim.  See Wallis v.
Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir.), cert. denied,
498 U.S. 959 (1990) (noting that plaintiffs' adversary complaint
that repeated plan objections was "an impermissible collateral
attack on the order confirming the plan.  Because the claims
raised in the [plaintiffs'] adversary complaint were already

13

raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims.").[4]

Plaintiffs' equitable subordination claim is therefore barred by applicable provisions of the Bankruptcy Code and the principle of claim preclusion.  Accordingly, Plaintiffs have failed to state a claim for equitable subordination pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]

**B.    The Securities Exchange Act Claims**

Defendants request that the Securities Claims be transferred to the Illinois District Court.  (Def.s' Reply 18-19).  Defendants argue that transfer is appropriate to allow the Securities Claims to be addressed by the same court that has been supervising related claims against the Debtor and others for four years.  (Id.).

Federal Rule of Bankruptcy Procedure 7087 provides, in relevant part, that "[o]n motion and after a hearing, the court

---

[4]     Plaintiffs argue that claim preclusion cannot apply to a request to modify or revoke a confirmed plan because that result would render Bankruptcy Code sections 1127 and 1144 meaningless.  This argument, however, fails because the Court has already determined that Plaintiffs have not properly pled facts from which the Court could find that revocation or modification of the Plan is proper.

[5]     As the Court will dismiss the equitable subordination claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court need not address Defendants' remaining arguments for dismissal.

may transfer an adversary proceeding or any part thereof to
another district pursuant to 28 U.S.C. § 1412 . . . ." Fed. R.
Bankr. P. 7087.

Section 1412 of title 28 of the United States Code
provides, that this Court "may transfer a case or proceeding
under title 11 to a district court for another district, in the
interest of justice or for the convenience of the parties." 28
U.S.C. § 1412.  Section 1412 is phrased in the disjunctive and a
proceeding is subject to transfer upon a sufficient showing that
either the interest of justice or the convenience of the parties
is met.  Transfer under section 1412 requires a case-specific
analysis and is subject to this Court's discretion.  Enron Corp.
v. Dynegy Inc., 2002 WL 32153911, at *3 (Bankr. S.D.N.Y.).  The
party seeking transfer, here the Defendants, has the burden to
show that transfer is appropriate by a preponderance of the
evidence.  In re Centennial Coal, Inc., 282 B.R. 140, 144
(Bankr. D. Del. 2002).  In addition, there is a presumption that
the bankruptcy court is the proper venue for cases related to a
bankruptcy proceeding.  Anic v. DVI Fin. Servs., Inc. (In re
DVI, Inc.), 2004 WL 1498593, at *2 (D. Del.).

In determining the "interests of justice" and the
"convenience of the parties," courts review various factors.
See, e.g. RFF Family P'ship, LP v. Wasserman, 2010 WL 420014 at
*7 (N.D. Ohio); Cont'l Airlines, Inc. v. Chrysler (In re Cont'l

15

Airlines, Inc.), 133 B.R. 585, (Bankr. D. Del. 1991).  The

factors typically considered in relation to the "interests of

justice" include: (i) whether transfer promotes the economic and

efficient administration of the bankruptcy estate; (ii) whether

transfer facilitates judicial efficiency; (iii) whether the

parties will receive a fair trial in either venue; (iv) whether

either forum has an interest in deciding the controversy; (v)

whether transfer would affect enforceability of any judgment

rendered; and (vi) whether the plaintiff's original choice of

forum should be disturbed. TIG Ins. Co. v. Smolker, 264 B.R.

661, 668 (Bankr. C.D. Cal. 2001); See also, Jumara v. State Farm

Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995) (finding similar

factors relevant to determination whether to transfer case

pursuant to 28 U.S.C. §§ 1401(a) and/or 1412).

Defendants have successfully carried their burden on each

of the relevant factors and have overcome the presumption that

this Court is the appropriate venue for the securities claims.

First, efficient administration of the Debtor's bankruptcy

estate does not require resolution of the securities claims

here.  The Securities Litigation is already pending in the

Illinois District Court and that court has denied a request to

transfer the Securities Litigation here.  It will be most

efficient for the Debtor's bankruptcy estate to address all

securities claims in one location before one judge.

Second, judicial efficiency is best served by transferring the securities claims to the Illinois District Court. That court has been overseeing Plaintiffs' securities claims against Northfield and related parties for over four years now and has issued opinions and orders on a variety of issues ranging from discovery to dispositive motions.  The Illinois District Court is clearly familiar with the facts and circumstances surrounding the Securities Litigation and regularly deals with such types of claims. This Court, on the other hand, has only been overseeing Plaintiffs' adversary proceeding for eight months.

Third, the effect of transfer on the availability of a fair trial is neutral.  Fourth, the Illinois District Court has an interest in deciding the controversy that has been pending before it for some time and that relates to occurrences within its jurisdiction.

Finally, although Plaintiffs' adversary proceeding involves parties not joined in the Securities Litigation, the bulk of Plaintiffs' claims here mirror the claims raised in the Securities Litigation.  Plaintiffs' original choice of forum for the claims was the Illinois District Court. The Court accords little weight to Plaintiffs' chosen forum for their second-round of securities litigation.  As a result of the foregoing, the interests of justice favor transferring the securities claims to the Illinois District Court.

17

The factors courts typically review when considering the "convenience of the parties" under section 1412 include: (i) the location of the plaintiff and defendant; (ii) the ease of access to necessary evidence; (iii) the convenience of witnesses; (iii) the availability of subpoena power; and (iv) the expense of obtaining unwilling witnesses. TIG Ins. Co. v. Smolker, 264 B.R. at 668.

The Court notes that the Illinois District Court considered the "convenience of the parties" in detail in its November 10, 2009 decision to deny the Plaintiffs' request to transfer the Securities Litigation to this Court.  The Illinois District Court found that the "convenience of the parties" was best served by keeping the matter in Illinois because the case arose out of alleged misrepresentations made by residents of its district, Northfield's primary place of business was in its district, Northfield's business records were located there, and many of the defendants were present in its district.  This Court finds the Illinois District Court's reasoning persuasive and agrees that the convenience of the parties favors transfer.

## V.   <u>CONCLUSION</u>

The Court will grant the Motions in part and dismiss Count I (Equitable Subordination).  The remaining claims will be transferred to the United States District Court for the Northern District of Illinois and the automatic stay will be lifted to permit the parties to proceed in that court.  An appropriate Order follows.

By the Court,

Dated: August 27, 2010

_____
Brendan Linehan Shannon
United States Bankruptcy Judge